UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**LAWAUN MONTEZ COLVIN**                                                                                    **PLAINTIFF**

**v.**                                                                **CIVIL ACTION NO. 5:23-CV-P142-JHM**

**K.S.P. OFFICER JIMMIE WILSON**                                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court upon a motion for summary judgment filed by Defendant Jimmie Wilson (DN 19). Plaintiff Lawaun Montez Colvin filed a response (DN 25). Defendant Wilson did not file a reply.

### I.

Plaintiff is incarcerated as a convicted prisoner at Kentucky State Penitentiary (KSP). Upon initial review of the complaint pursuant to 28 U.S.C.§ 1915A, the Court allowed an Eighth Amendment excessive-force claim to proceed against KSP Officer Wilson in his individual capacity.

### II.

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id*. at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

Title 28 U.S.C. § 1746 permits a document signed and dated under penalty of perjury to be used instead of a sworn declaration or affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment.") (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Additionally, when video evidence is available, the facts must be viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

The Court considers the following evidence in deciding Defendant Wilson's summary-judgment motion – Plaintiff's verified complaint (DN 1); the Incident Report Summary, Information Reports, and Medical Incident Report submitted by Defendant Wilson (DN 19-3); and the security camera footage of the use-of-force incident submitted by Defendant Wilson (DN 22).

### III.

In his motion for summary judgment, Defendant Wilson argues that he is entitled to judgment in his favor because the undisputed evidence shows that Plaintiff's excessive-force claim

fails on the merits and because he is entitled to qualified immunity. Because the Court concludes below that Defendant Wilson is entitled to judgment based on the merits of Plaintiff's excessive-force claim, the Court need not address his qualified immunity argument.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The ban on cruel and unusual punishments prohibits the "'unnecessary and wanton infliction of pain'" on prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Sixth Circuit recently analyzed the Eighth Amendment excessive-force standard as follows:

> What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023).

**A. Objective Component**

In *Sootsman*, the Sixth Circuit explained the objective component generally as follows:

> [P]risoners who challenge a correctional officer's use of force need not prove "extreme" or "serious" harms (the types of harms that prisoners must allege to challenge their conditions of confinement or medical care). *See Hudson*, 503 U.S. at 9. The [Supreme] Court [has] reasoned that the Eighth Amendment's "contextual" objective element relies on our "contemporary standards of decency" to decide whether specific conduct qualifies as cruel and unusual. *Id*. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). And the malicious and sadistic infliction of pain violates these contemporary standards whether or not the pain leads to any significant injury. *Id*. at 9. After all, "diabolic" torture sometimes may not cause such an injury. *Id*. At the same time, the Court has added a limiting

> principle to this conclusion by differentiating an injury from the force that causes it. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Although the Eighth Amendment can reach minor injuries caused by significant force, the Court explained, the amendment simply does not apply to "de minimis uses of physical force" so long as this force does not repulse "the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citation omitted). . . .

*Sootsman*, 79 F.4th at 616.

Here, because the Court finds that the evidence fails to satisfy the subjective component, as set forth below, it need not determine whether the evidence satisfies the objective component.

### B. Subjective Component

In *Sootsman*, the Sixth Circuit explained the subjective component as follows:

> As a subjective matter, the [Supreme] Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care). *See [Hudson]* at 5-6; *cf. Wilson*, 501 U.S. at 302-03. The Court has instead described the "core judicial inquiry" in the use-of-force context as distinguishing between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment. *See Hudson*, 503 U.S. at 5-7. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324.

*Sootsman*, 79 F.4th at 616.

The court further expounded:

> To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force? *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. More generally, we have added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment. So we defer to their decisions and avoid "unreasonable post hoc judicial second-guessing" of their conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citation omitted); *see also Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

4

*Sootsman*, 79 F.4th at 618.

As applied here, the Supreme Court's factors show that Plaintiff lacks sufficient evidence to prove Defendant Wilson's malevolent intent. First, although the Eighth Amendment does not require a prisoner to suffer a "serious injury," the "absence" of such an injury goes a long way to disprove any claim that an officer used force with the required intent to harm. *Hudson*, 503 U.S. at 7-8. The Sixth Circuit has thus denied a prisoner's Eighth Amendment claim when an officer's use of force caused the prisoner to suffer "only some tenderness, bruising, and slight swelling," *Bullocks v. Hale*, No. 20-3428, 2021 U.S. App. LEXIS 5987, at *6 (6th Cir. Mar. 1, 2021), or "minor lacerations and cuts," *Lockett*, 526 F.3d at 876; *see also Richmond v. Settles*, 450 F. App'x 448, 453-54 (6th Cir. 2011). Here, the Medical Incident Report submitted by Defendant Wilson shows that when a nurse evaluated Plaintiff after the use-of-force incident, Plaintiff "denied any injuries and no injuries were observed." (DN 19-3, PageID #:93). Moreover, although Plaintiff states in his response to the motion for summary judgment that he suffered neck pain as well as serious psychological harm as result of Defendant Wilson's actions, he has not presented any evidence to support this assertion.

Second, Defendant Wilson had a plausible basis to believe that Plaintiff constituted a threat that needed to be restrained since Plaintiff spit in Defendant Wilson's face, lunged toward him, and then "shoulder-checked" him. (DN 19-3, Extraordinary Incident Report, PageID #:79).

Third, the video shows that the entire incident lasted less than one minute and that Defendant Wilson used an amount of force proportional "to the need for forcibly bringing [Plaintiff] under control." *Lockett*, 526 F.3d at 876. Plaintiff states as follows in his verified complaint:

> While in handcuffs and leg shackles, I was slammed on my head and with several attempts Lt. Jimmie Wilson try to put me in a headlock. When that didn't work, he wrapped his hand around my neck in an attempt to strangle me. As additional officers arrived to the contact, I was lifted off the floor and placed up against the wall. As I was up against the wall Lt. Wilson attempted to wrap his head around my back again and the [] officers stopped him. . . . [1]

(DN 1, PageID #:4).  However, this version of the incident is contradicted by the video evidence. As stated above, when video evidence is available, the facts must be viewed "in the light depicted by the videotape." *Scott*, 550 U.S. at 381 (2007).

The video shows that there may have been some of kind of wrist restraints on Plaintiff when the incident began.  It is not clear whether his legs had shackles, but if they did, the shackles were not effectively restraining Plaintiff in any way.  Indeed, the video shows that Plaintiff was not fully restrained until the two officers arrived to assist Defendant Wilson in securing Plaintiff and that it took substantial effort and struggle by Defendant Wilson to regain control over the combative Plaintiff.  Moreover, although Plaintiff uses various terms to describe the techniques Defendant Wilson used to gain control of him, it is also clear from the video that Defendant Wilson never attempted to strangle Plaintiff and never placed Plaintiff in a sustained headlock or chokehold.  Indeed, if those are in fact some of the techniques that Defendant Wilson used to gain control of Plaintiff, the video shows he used them only for a few seconds at a time and only while Plaintiff was still fighting him.  The video also shows that Plaintiff was never slammed on his head.

---

[1] In the verified complaint, Plaintiff also states, "As this altercation happen my life flashed before my eyes. With Lt. Wilson making threats saying, 'I'll kill you, you f*cking n*gger.'" (DN 1, PageID #:4).  Although the Court does not condone the use of these words, they do not change the Court's determination that the totality of the evidence shows that Defendant Wilson was not acting "'maliciously and sadistically for the very purpose of causing harm.'" *Sootsman*, 79 F.4th at 622 (quoting *Whitley*, 475 U.S. at 320-21).

In *Sootsman*, the Sixth Circuit considered whether the use of a chokehold to gain control of a prisoner constituted excessive force. It considered the following jurisprudence:

> Our caselaw has found . . . the level of force proportional when it involved, for example, "[s]hoving" or "grabbing" a prisoner to gain control of him, *id.*; *see also, e.g., Begley v. Tyree*, [No. 17-5001,] 2018 U.S. App. LEXIS 3417 (6th Cir. Feb. 13, 2018) (order), pushing and holding a prisoner against a wall to handcuff him, *Brooks v. Fed. Bureau of Prisons*, [No. 98-5615, ]1999 U.S. App. LEXIS 13626, (6th Cir. June 15, 1999) (order), or using a "leg-sweep maneuver" to take a prisoner to the ground so that she could be handcuffed and returned to her cell, *Griffin*, 604 F.3d at 954-56.

*Sootsman*, 79 F.4th at 620. The *Sootsman* court then concluded that the defendant's actions in bringing the plaintiff to the ground to gain control of him and handcuff him, including the use of a chokehold, were similar to the actions taken by prison officials in the above cases and proportional to the need to bring the plaintiff under control. Here, the Court likewise concludes that the video evidence shows Defendant Wilson only used the amount of force necessary to gain control of Plaintiff.

Fourth, for these same reasons, the evidence shows that Defendant Wilson "tempered the severity of his use of force." *Whitley*, 475 U.S. at 321. "The video shows that [Defendant Wilson did not take any action] extraneous to the goal of gaining control of [Plaintiff]." *Sootsman*, 79 F.4th at 620. "All told, . . . no reasonable jury could find that [Defendant Wilson]'s actions arose from a sadistic intent to cause pain . . . rather than a [] belief of the need to restrain him." *Id*.

Finally, as to Plaintiff's argument that Defendant Wilson's use of force may have violated Kentucky state policy regarding the use of the force, a § 1983 claim cannot be based on a violation of state law or policy. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 U.S. Dist. LEXIS 233933, at *10 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007))

("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994); *see also Sootsman*, 79 F.4th at 620.[2]

## IV.

For the reasons set forth above, **IT IS ORDERED** that Defendant Wilson's motion for summary judgment (DN 19) is **GRANTED**.

Date: December 11, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Counsel of Record
4414.011

---

[2] In *Sootsman*, a jail investigator found that the defendant's use of force did not follow the use-of-force policy of the sheriff's department. The defendant was also charged with assault based upon his actions in the use-of-force incident and ultimately pleaded guilty to a battery misdemeanor. *Sootsman*, 79 F.4th at 614. The court held that that "these factors cannot save [the plaintiff's] claim" because neither shows that the defendant used force "'maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 622 (quoting *Whitley*, 475 U.S. at 320-21).